PIKE CREEK CHIROPRACTIC CEN-
TER, P.A., a Delaware corporation, Co–
Defendant Below, Appellant,

v.

David ROBINSON, D.C., Co–Defendant
Below, Appellee.

Supreme Court of Delaware.

Submitted: Jan. 5, 1994.
Decided: March 4, 1994.

David L. Finger, Biggs and Battaglia, Wilmington, for appellant.

F. Alton Tybout, Tybout, Redfearn & Pell, Wilmington, for appellee.

Before MOORE, WALSH and HOLLAND, JJ.

WALSH, Justice:

In this appeal, we address two issues regarding a contractual right to indemnification. Both questions arise as the result of a tort action brought by a third party against both the indemnitor and indemnitee. First, is an indemnitee entitled to recover the expense of defending the action when the plaintiff's complaint makes allegations against the indemnitee for which it could be indemnified, and allegations against the indemnitee for which it could not be indemnified, if it is subsequently determined that the latter allegations are without merit? Second, does a broad express indemnity clause require the indemnitor to pay the indemnitee's attorneys' fees and expenses incurred in enforcing the indemnification clause? We conclude that the answer to both questions is in the affirmative. Accordingly, we reverse and remand the matter to the Superior Court for a determination of the appropriate attorneys' fees and expenses.

**I**

The facts underlying the indemnification claim are not in dispute. The appellant, Pike Creek Chiropractic Center ("PCCC"), owned and operated a facility in New Castle County at which it offered chiropractic services and treatment. The appellee, David Robinson, D.C. ("Robinson"), was employed by PCCC as a chiropractic physician. In October, 1990, Brenda Evans ("Evans") became a patient at PCCC, where she was treated by Robinson. Evans allegedly suffered headaches, temporary loss of vision, nausea, and slurred speech as a result of Robinson's treatment. On June 1, 1991, Evans filed suit alleging that her injuries were a direct and proximate result of the negligence of both Robinson and PCCC. Evans also alleged that PCCC was vicariously liable for Robinson's alleged negligence and for the alleged negligence of other PCCC employees.

Robinson was an employee of PCCC pursuant to a contract of employment which contained the following clause (the "Indemnification Clause"):

(b) Indemnification—The Employee [Robinson] shall hold the Employer [PCCC] harmless and indemnify the Employer, its successors and assigns, against any liabilities and expenses, including attorney's fees which result from any acts

and admissions [sic][1] of the Employee.

On June 25, 1991, PCCC requested that Robinson and his insurer indemnify and hold harmless PCCC in connection with the Evans litigation. This tender of defense was refused, although Robinson's insurer indicated that it might later change its position. PCCC thereafter undertook its own defense.

On March 30, 1992, following certain discovery, Evans stipulated that her only claim against PCCC was that it was vicariously liable for Robinson's alleged negligence. She thus admitted that there was no negligence on the part of PCCC or any of its employees, other than Robinson. Upon the filing of this stipulation, Robinson agreed to defend PCCC, but not to indemnify it for legal expenses already incurred in defending the action.

PCCC, relying on the Indemnification Clause and general agency principles, filed a declaratory judgment action in the Superior Court to require Robinson to indemnify it for all costs and attorneys' fees incurred in defending the action. On cross-motions for summary judgment, the Superior Court ruled that PCCC was not entitled to indemnification. The court held that Robinson's duty to defend PCCC did not arise until the stipulation narrowed the claims asserted against PCCC to one of vicarious liability for Robinson's alleged negligence. The court further held that no duty to indemnify arose because the case was settled by Robinson without contribution from PCCC and thus PCCC suffered no indemnifiable loss. This appeal followed.

## II

■ This Court's standard of review on appeal from a grant of summary judgment is *de novo. Merrill v. Crothall–American, Inc.,* Del.Supr., 606 A.2d 96, 99 (1992). There is concededly no material issue of fact precluding the grant of summary judgment. Thus, like the Superior Court, our task is to determine the applicable principles of law which govern PCCC's entitlement to indemnification.

Settled Delaware law permits recovery of attorneys' fees pursuant to an express indemnification agreement similar to the Indemnification Clause.

> The rule in most jurisdictions, regardless of whether indemnity is based upon an implied or an express agreement, is that when a claim is made against an indemnitee for which he is entitled to indemnification, the indemnitor is liable for any reasonable expenses incurred by the indemnitee in defending against such claim, regardless of whether the indemnitee is ultimately held liable.

*Eastern Memorial Consultants, Inc. v. Gracelawn Memorial Park, Inc.,* Del.Supr., 364 A.2d 821, 825 (1976) (*quoting St. Paul Fire & Marine Ins. Co. v. Crosetti Bros., Inc.,* 256 Or. 576, 475 P.2d 69, 71 (1970)).

Here, however, we must determine when the right to indemnification commenced. Robinson contends, and the Superior Court agreed, that the duty to defend PCCC did not arise until the stipulation narrowed the claims asserted against PCCC and therefore PCCC is not entitled to indemnification for the expenses it incurred prior to that time. PCCC argues that its right to indemnification should not be judged by the allegations of Evans' complaint, but rather by the actual facts of liability subsequently developed. Since it was eventually conceded that PCCC was not independently liable for Evans' injuries, PCCC contends that it is entitled to indemnification for all expenses incurred in defending the action, including those incurred prior to the stipulation. The result obtains, it is argued, because the Indemnification Clause required indemnification for any loss on account of Robinson's acts or omissions.

This is an issue of first impression in Delaware and the results in other jurisdictions are not uniform. Some jurisdictions, following the rule enunciated in *Westfield v. Mayo,* Mass.Supr., 122 Mass. 100 (1877), take the view that whenever the plaintiff alleges in the complaint that the indemnitee is independently liable, the indemnitor is not obligated to pay attorneys' fees, even if it is later determined that there is no basis for fixing

1. The parties agree this should read "acts and      *omissions."*

independent liability upon the indemnitee. Under this view, the indemnitee is indemnified "only when he defends solely and exclusively the act of the [indemnitor] and is compelled to defend no misfeasance of his own." *Id.* at 109. *See, e.g., Davis v. Air Tech. Indus., Inc.,* 22 Cal.3d 1, 148 Cal.Rptr. 419, 582 P.2d 1010 (1978); *Griffith Consumer Co. v. Spinks,* D.C.App., 608 A.2d 1207 (1992); *Conrad v. Suhr,* N.D.Supr., 274 N.W.2d 571 (1979); *Shaffer v. Honeywell, Inc.,* S.D.Supr., 249 N.W.2d 251 (1976). The rationale underlying this approach is that when the indemnitee and indemnitor are alleged to have been independently liable, each is defending for its own benefit and therefore should have to pay for its own defense.

Other jurisdictions permit the indemnitee to recover its expenses in defending actions arising from the wrongdoing of the indemnitor, if the indemnitee is free from actual wrongdoing. These jurisdictions look to the actual facts developed during litigation, not the allegations of the plaintiff's complaint, since

> [i]t does not require any legal ingenuity to draft a complaint charging someone with negligence, and no evidence is needed to support such an allegation. The right to indemnification for litigation expenses should not depend on the pleading choices of a third party, who through an excess of caution or optimism may allege far more than he can prove at trial.

*Piedmont Equip. Co., Inc. v. Eberhard Mfg. Co.,* 99 Nev. 523, 665 P.2d 256, 259–60 (1983) (citations omitted). *See, e.g., Heritage v. Pioneer Brokerage & Sales, Inc.,* Alaska Supr., 604 P.2d 1059 (1979); *INA Ins. Co. v. Valley Forge Ins. Co.,* Ct.App., 150 Ariz. 248, 722 P.2d 975 (1986); *Central Motor Parts Corp. v. E.I. duPont deNemours & Co.,* A.D., 251 N.J.Super. 5, 596 A.2d 759 (1991); *Pullman Standard, Inc. v. Abex Corp.,* Tenn.Supr., 693 S.W.2d 336 (1985); *Hanover Ltd. v. Cessna Aircraft Co.,* Utah App., 758 P.2d 443 (1988).

■ We believe the approach which fixes the scope of indemnification on the actual conduct of the indemnitee is supported by logic and fairness. The indemnitee's actual wrongdoing or lack thereof, not a third-party plaintiff's allegations, should be determinative. Where the indemnitee is free from actual wrongdoing, it should not be divested of its legal right to indemnification due to the unsubstantiated pleading choices of a third party. This is especially true here, where the indemnitor has expressly agreed to indemnify the indemnitee and the parties have thereby agreed to allocate the risk of loss in a certain manner. PCCC would be arbitrarily denied the benefit of its bargain with Robinson were Evans' meritless allegations sufficient to void its contractual right to indemnification. A court construing an indemnification agreement should look to the actual facts developed through discovery, or at trial, to determine if the indemnitee is free from actual wrongdoing and therefore entitled to complete indemnification.[2] So viewed, PCCC is entitled to indemnification from Robinson for the litigation expenses it incurred in defending the claims for which Robinson would have been required to indemnify PCCC in the event Evans had obtained an actual judgment. *See Piedmont,* 665 P.2d at 260; *Central Motor Parts,* 596 A.2d at 762; *Pullman,* 693 S.W.2d at 339; *Hanover,* 758 P.2d at 449.

■ We are not persuaded by Robinson's argument that PCCC is not entitled to indemnification because there has never been a finding that Robinson was actually negligent. Robinson contends that even if PCCC is entitled to indemnification under the Indemnification Clause, there is still a requirement that the litigation proceed through trial with a finding in favor of PCCC on the allegations of negligence on its part and against Robinson on the allegations of negligence as to him. Such a requirement has no foundation in reason or policy.

> If the right to costs and attorneys' fees for defending the law suit [sic] is made contingent on [the indemnitor] losing on the merits of that action, in every case the indemnitee would be put in the difficult position of attempting to show lack of his

---

2. Since it is uncontroverted that PCCC has been absolved of any allegation of actual wrongdoing by virtue of the stipulation, we need not decide whether, and to what extent, it would be entitled to any indemnification were it found to be directly liable for Evans' injuries.

own culpability at the same time that he is aiding the plaintiff's case by attempting to prove the liability of his indemnitor. Such a situation certainly would be contrary to the indemnitee's and the indemnitor's interests in many instances, and we decline to create an incentive for accomplishing that result.

*Heritage,* 604 P.2d at 1067. *See also INA Ins. Co.,* 722 P.2d at 980; *Hanover,* 758 P.2d at 450. Moreover, such a requirement would be inconsistent with settled Delaware law favoring settlements. *See, e.g., Rome v. Archer,* Del.Supr., 197 A.2d 49, 53 (1964).

■ In addition to being entitled to indemnification for the litigation expenses it incurred in defending the claims for which *Robinson* would have been required to indemnify it in the event Evans had obtained an actual judgment, PCCC is also entitled to indemnification for the expenses it incurred in defending against the claims that it was independently negligent. This follows from our rationale that the actual facts, not the pleadings, control the right to indemnification. However, a brief explication of this holding is appropriate in light of seemingly contrary authority.

Generally, courts have held that the indemnitee is not entitled to indemnification for defending against claims of its own direct negligence, even though entitled to indemnification for defending against vicarious liability. *See, e.g., Piedmont,* 665 P.2d at 260; *Central Motor Parts,* 596 A.2d at 762; *Hanover,* 758 P.2d at 448. This approach espouses an apportionment between the expenses incurred as a result of the vicarious claims and those related to the direct claims.

This method is appropriate in the implied indemnity context of the cited cases which involve products liability actions where a wholesaler or retailer is seeking indemnification from the manufacturer. In such situations, the potential liability of the indemnitee generally results only from being a part of the distribution chain of the defective product and the indemnitee is entitled to indemnification under general agency principles. Allegations of independent negligence form an entirely separate basis for liability, unconnected with the indemnitee's role in the dis-

tribution chain. It would be unjust to obligate the indemnitor to defend or indemnify the indemnitee as to those allegations.

■ By contrast, in the negligent treatment context, as here, which is akin to medical malpractice, the entire litigation stems from Robinson's treatment of Evans. But for his alleged negligence, PCCC would not have been named as a defendant and incurred any litigation expense. Since Robinson expressly agreed to indemnify PCCC for his acts or omissions, and PCCC's loss (litigation expenses) is a direct result of Robinson's alleged negligence, PCCC is entitled to its bargained-for indemnification. To hold otherwise would deprive PCCC of its contractual right to be held harmless and indemnified for Robinson's acts or omissions simply by virtue of the meritless pleading allegations of a third party. Accordingly, we hold that in an express indemnification context akin to this one, where the indemnitee is free from actual wrongdoing, the indemnitee is entitled to be made whole for all losses suffered due to the conduct of the indemnitor, even those attributable to unfounded allegations of the indemnitee's independent negligence.

### III

■ Because PCCC is contractually entitled to be held harmless, we likewise conclude it is entitled to its attorneys' fees incurred in enforcing the Indemnification Clause. The Indemnification Clause is very broad in scope and requires Robinson to hold harmless and indemnify PCCC against "any liabilities and expenses, including attorney's fees" resulting from Robinson's acts or omissions. We adopt the reasoning of the Alaska Supreme Court:

> The hold harmless clause required that the [indemnitor] shall save harmless the [indemnitee] from all suits, actions, or claims of any character brought on account of injuries or damages sustained by any person. The [indemnitee] is not held harmless if it must incur costs and attorney's fees in bringing suit to recover on the indemnity clause. The [indemnitor] on the other hand can avoid such costs and attor-

ney's fees by paying the amount due without the necessity of suit.

*Manson–Osberg Co. v. State*, Alaska Supr., 552 P.2d 654, 660 (1976). *Accord Dalton v. Childress Service Corp.*, 189 W.Va. 428, 432 S.E.2d 98 (1993). PCCC will not be held harmless from Robinson's acts or omissions unless it receives *all* legal expenses and attorneys' fees it has incurred, including those incurred in enforcing the Indemnification Clause. Robinson could have avoided this result by accepting PCCC's tender of the defense or paying the amount due without forcing PCCC to bring suit. Accordingly, we read the Indemnification Clause as requiring Robinson to indemnify PCCC for its attorneys' fees and expenses incurred in enforcing the provision. *See Great American Indemnity Co. v. State, to Use of Mills*, Del.Supr., 88 A.2d 426, 432 (1952).

We hold that where indemnification is required and the indemnitor has been given proper notice of the pending litigation and an adequate opportunity to undertake its duty to defend, the indemnitee is entitled to recover its costs and attorneys' fees for the expenses incurred in its defense of the action giving rise to the claim to indemnification and in enforcing its right to indemnification. Therefore, the decision of the Superior Court is REVERSED and the matter is REMANDED for a determination of the appropriate award of attorneys' fees and expenses.